Receipt number AUSFCC-10906956

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
### (Bid Protest)

| | |
|---|---|
| WENDLER, INC., | Case No. _25-2015 C_ |
| *Plaintiff,* | Judge: _____ |
| v. | |
| THE UNITED STATES, | |
| *Defendant.* | |

## COMPLAINT FOR DECLARATORY RELIEF AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

Plaintiff, Wendler, Inc. ("Wendler"), by and through its undersigned attorneys, and for its Complaint against Defendant United States of America, Army Corps of Engineers, states as follows:

### NATURE OF THE ACTION

1.    This protest arises from Invitation for Bid No. W912EK26BA001 (including operative amendments, "IFB" or "Solicitation," **Exhibit A**) issued by the United States Army Corps of Engineers, Rock Island District ("USACE," the "Agency," or the "Government"), for the construction of a Cedar Rapids Flood Risk Management Project located in Cedar Rapids, Iowa (the "Procurement").

2.    The Agency committed reversible procurement error by issuing the Solicitation that mandates that otherwise responsible bidders enter into a Project Labor Agreement ("PLA") with a labor union in order to be eligible for award. *See*

Exhibit A at 9, 15, 19. This makes the award conditioned upon a statutorily unauthorized socioeconomic set-aside in violation of the Competition in Contracting Act ("CICA"), 41 U.S.C. § 3301.

3.    CICA requires that every federal procurement be awarded based on "full and open competition through the use of competitive procedures" unless a **statutory** exception to full and open competition exists. *See* 41 U.S.C. § 3301 *et seq.*

4.    Because this Solicitation limits award to only those bidders who enter into a PLA with a labor union, the Solicitation violates CICA's statutory requirement that exceptions to full and open competition be authorized by Congress.

5.    Specifically, the PLA mandate stems not from a Congressional statute but instead from Executive Order 14063, as implemented by Federal Acquisition Regulation ("FAR") clauses 52.222-33, and 52.222-34 (collectively, the "PLA Requirements"), which collectively have the effect of setting-aside this competition for only those offerors who have entered into PLAs with labor unions and deeming offers from all others to be nonresponsive. The Solicitation incorporates FAR 52.222-33, Alternate I, and FAR 52.222-34. Exhibit A at 9, 15, 19.

6.    It is well established that executive orders and FAR regulations that violate a statute, such as those in this Solicitation, are void and unenforceable. *E.g., Kentucky v. Biden*, 571 F. Supp. 3d 715, 726–27 (E.D. Ky. 2021) (enjoining the government from enforcing the executive order mandating vaccinations for federal contractors because the order exceeded executive branch authority under the Federal Property and Administrative Services Act ("FPASA")) (*affirmed as modified by*

*Commonwealth v. Biden*, 57 F.4th 545 (6th Cir. 2023)); *Georgia v. Pres. of the United States*, 46 F.4th 1283, 1295 (11th Cir. 2022) ("A presidential directive can stand only if those subordinate officials have the statutory authority that they are told to exercise.").

7.    It is the judiciary's role to interpret statutes independent of influence from the executive branch's political and policy preferences. *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 385 (2024).  The Court should carry out this task and rein in the executive branch's attempt to implement policy through a sweeping executive order that unlawfully prohibits a contract award to an otherwise responsible contractor who refuses to enter into a PLA with a labor union, because Congress has not passed a law authorizing this exception to CICA's statutory requirement for full and open competition.

8.    The PLA Requirements substantially and unlawfully prevent otherwise qualified bidders, including Wendler, from receiving an award under this Solicitation solely if they do not enter into an agreement with a labor union, despite the lack of a statutory exception to CICA that would allow the government to set aside this Solicitation for only offerors that enter into a PLA with a labor union.  *See* Exhibit A at 9, 15, 19.

9.    The Agency's error tainted this Procurement when the Agency arbitrarily, capriciously, and unlawfully incorporated the PLA Requirements into the Solicitation and prejudiced Wendler.  The PLA Requirements render the Solicitation

3

unlawful, arbitrary, and capricious because they constitute a socioeconomic set-aside that lacks proper Congressional authorization.  *Cf.* 15 U.S.C. § 644; FAR Subpart 6.2.

10.    Through the instant protest, Wendler hereby challenges and seeks to void the unlawful PLA Requirements.

## PARTIES

11.    Wendler is a corporation formed under the laws of Iowa.  Wendler has performed nearly $1 billion in infrastructure projects throughout its 52-year history, including multiple flood control projects for USACE and the City of Cedar Rapids. Wendler has completed more flood control, pump station, and water projects in eastern Iowa than any other active Iowa contractor.

12.    Defendant is the United States of America, acting through USACE.

## JURISDICTION

13.    This Court has jurisdiction over the instant bid protest pursuant to the Tucker Act, 28 U.S.C. § 1491(b)(1).

14.    This Court has exclusive jurisdiction to review alleged violations of statute or regulation, as well as the validity of a challenged regulation, in connection with a procurement or proposed procurement.  28 U.S.C. § 1491(b)(1); *see Boeing Company v. United States*, 119 F.4th 17, 24–25 (Fed. Cir. 2024).[1]

---

[1] *Boeing* discussed this Court's jurisdiction within the context of claims brought by contractors under the Contract Disputes Act ("CDA"), 41 U.S.C. § 7101 *et seq.*  This Court possesses exclusive jurisdiction to hear CDA claims under 28 U.S.C. § 1491(a) and bid protest claims under 28 U.S.C. § 1491(b), and the Federal Circuit's discussion in *Boeing* concerning this Court's jurisdiction to review the validity of regulations in connection with contract cases should thus be applied to the bid protest context as well. *See MVL USA, Inc. v. United States*, 174 Fed. Cl. 437, 461 n. 2 (2025) (acknowledging that "the Federal

15.    The Pre-Filing Notice for this action was filed on November 24, 2025.

16.    Wendler has standing as an "interested party" because it is a contractor who will submit a bid in response to the Solicitation and whose direct interests will be affected by evaluation of bids for and award of a contract in response to this Solicitation.

17.    Wendler is a responsible bidder with relevant financial, technical, and performance experience on other United States large-scale construction contracts that qualify it to compete for and receive this award under the terms and conditions of the Solicitation.

**STATEMENT OF FACTS**

18.    Wendler will be prejudiced without revision of the Solicitation to remove the PLA Requirements because the Agency has improperly set aside this IFB based on a socioeconomic set-aside in a manner that: (i) lacks proper Congressional authorization and (ii) is arbitrary and capricious.  The Solicitation threatens the integrity of the procurement process and, if permitted to proceed, will cause this contract to be awarded on the basis of an executive branch policy preference that is unsupported by an act of Congress.  Because this would constitute a violation of CICA, this Procurement is unlawful and must be enjoined.  *See Goodwill Industries*

---

Circuit's *Boeing* instruction may be read as acknowledging [this Court's] exclusive jurisdiction to review agency regulations impacting federal contract cases just as the Federal Circuit has permitted within the tax context.  *See, e.g.*, *Balestra v. United States*, 803 F.3d 1363 (Fed. Cir. 2015) (reviewing a Treasury Department tax regulation and conducting a full APA analysis).").

5

*of South Florida, Inc. v. United States*, 162 Fed. Cl. 160, 210–11 (2022) (the public interest is served when violations of law are enjoined when present in a solicitation).

19.    This is not the first attempt by the Government to impermissibly impose sweeping mandates upon federal contractors by way of an Executive Order.  Federal courts in recent years have rejected the Government's attempt to enforce a federal contractor vaccination mandate.  *See Kentucky v. Biden*, 571 F. Supp. 3d 715 (E.D. Ky. 2021) (*affirmed as modified by Commonwealth v. Biden*, 57 F.4th 545 (6th Cir. 2023)); *Georgia v. Pres. of the United States*, 46 F.4th 1283 (11th Cir. 2022).[2]

20.    More recently, this Court struck the very same PLA Requirements from various solicitations protested by consolidated plaintiffs in *MVL USA, Inc. v. United States*, 174 Fed. Cl. 437 (2025) (hereinafter, "*MVL*").

21.    This Court's January 21, 2025 decision in *MVL* provided relief only to the twelve plaintiffs in that litigation, but the issues inherent in the PLA Requirements persist and form the directly-related basis of this protest.

22.    After this Court's *MVL* decision, the Department of Defense ("DoD") issued a February 7, 2025 Class Deviation 2025-O0002 directing DoD contracting

---

[2] In *Texas v. Biden*, 694 F. Supp. 3d 851 (S.D. Tex. 2023), a federal trial court in Texas enjoined enforcement of E.O. 14026, a Biden-administration federal contractor minimum wage mandate.  The Fifth Circuit reversed and remanded, holding that President Biden did not violate FPASA when promulgating the E.O.  *Texas v. Trump*, 127 F.4th 606, 613 (5th Cir. 2025).  President Trump then rescinded E.O. 14026, causing the Fifth Circuit to vacate its decision and direct the district court to dismiss the litigation with prejudice.  *Texas v. Trump*, No. 23-40671, 2025 WL 968277 at *1 (Mar. 28, 2025).  The breadth of the president's authority under FPASA remains an open issue, though this court has specifically found helpful the Eleventh Circuit's reasoning in *Georgia v. Pres. of the United States*, 46 F.4th 1283 (11th Cir. 2022).  *See MVL USA Inc.*, 174 Fed. Cl. at 460.

officers not to incorporate the PLA Requirements in solicitations for large-scale construction procurements. **Exhibit B**.

23.    Five days after DoD issued its Class Deviation, GSA issued a similar Class Exception removing the requirement for GSA contracting officers to include the PLA Requirements in Land Port of Entry ("LPOE") procurements. **Exhibit C**.

24.    On April 23, 2025, DoD revised and superseded its February 7 Class Deviation. **Exhibit D**.  DoD correctly predicted that the reasoning of this Court's *MVL* decision "is expected to apply to additional procurements and result in additional protests if contracting officers continue to include PLA requirements in solicitations in accordance with FAR 22.503(b)."  Exhibit D at 1.

25.    Then, on May 16, 2025, the United States District Court for the District of Columbia ("D.D.C.") issued a decision in a case captioned *N. Am.'s Building Trades Unions v. Dept. of Defense*, No. 25-1070, 2025 WL 1423610 (D.D.C. May 16, 2025) (hereinafter, "*NABTU*").  In *NABTU*, two trade union industry groups challenged DoD and GSA's PLA Class Deviation and Exception, respectively, arguing that the agencies unlawfully revoked the PLA Requirements that are otherwise mandated by E.O. 14063 and FAR 52.222-33 and 52.222-34.

26.    D.D.C. agreed with the trade association plaintiffs and issued a preliminary injunction setting aside the DoD and GSA memoranda. *NABTU* at *15.

27.    D.D.C.'s *NABTU* decision cuts directly against Congress' mandate that this Court possess exclusive jurisdiction over federal procurement law, regulations, bid protests, and contract disputes.

28.     Congress explicitly divested United States district courts of jurisdiction to hear procurement disputes in an effort prevent forum shopping and to promote uniformity in procurement law. 28 U.S.C. § 1491(a)–(b); Pub. L. No. 104–320, §12(d).

29.     *NABTU* reflects the consequence of failing to respect clear statements of federal jurisdiction: interest groups forum shop for favorable tribunals. *See Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1079 (Fed. Cir. 2001) ("Yet, to prevent forum shopping and to promote uniformity in government procurement award law, Congress sought to channel the entirety of judicial government contract procurement protest jurisdiction to the Court of Federal Claims.").

30.     After *NABTU*, GSA issued SPE Memo 2025-13 on May 29, 2025 rescinding its LPOE PLA Class Exception, thereby directing contracting officers to once again include the PLA Requirements in LPOE large-scale construction solicitations unless an exception existed under GSA's PLA policy. **Exhibit E**.

31.     DoD followed suit and rescinded its PLA Class Deviation on June 2, 2025, similarly reinstating the requirement for DoD contracting officers to comply with the PLA Requirements by including FAR 52.222-33 and 52.222-34 in large-scale construction solicitations. **Exhibit F**.

32.     DoD and GSA, through their respective class deviations, attempted to comply with this Court's *MVL* decision. Their attempts were thwarted by D.D.C.'s *NABTU* decision. *MVL* and *NABTU* placed contracting officers, procurement officials, and federal contractors in a state of confusion.

33.    On June 12, 2025, the Office of Management and Budget ("OMB")
weighed in.  OMB published M-25-29, "Memorandum to the Heads of Executive
Departments and Agencies," prohibiting procuring agencies from issuing "overly
broad [FAR] deviations related to [PLAs]." **Exhibit G** at 1.  OMB clarified that the
Trump Administration supports PLAs when they are "practical and cost effective."
*Id.*

34.    As a starting point however, the market research in *MVL* consistently
showed that PLA's were neither practical nor cost effective.  In fact, the market
research "consistently show[ed] [PLAs] would reduce adequate competition at a fair
and reasonable price for the solicitations." The only support provided by the
Government for use of PLAs was the "policy determination that's been made by the
President and the FAR." *MVL* at 441 (cleaned up), 447–49, 464–66, 470 ("Even when
presented with data supporting an exception by third-party market researchers the
agencies themselves commissioned, the agencies declined to pursue an exception.")
(citation omitted).  It remains to be seen from the Administrative Record to be filed
in this action whether the Agency has conducted a thorough analysis of market
conditions for this Solicitation.

35.    Moreover, OMB's Memo M-25-29 continues the unlawful policy
presumption of E.O. 14063 and removes the only option (*i.e.*, class deviation and/or
exception from PLAs) for agency procurement officials seeking large-scale
construction services to legally comply with CICA's full and open competition

mandate in light of *MVL*. The rule flips from max competition to restricted competition.

36.    The Agency's decision to include the PLA Requirements in the Solicitation imposes undue prejudice on Wendler. To be deemed eligible for an award under this Solicitation, Wendler must negotiate labor prices and work terms with one or more labor unions, which leaves these items largely outside Wendler's control. Wendler cannot control pricing and labor terms that are central to the submission of its bid, which is highly prejudicial to its ability to submit a bid based on what it believes to be the most competitive pricing, schedule, and other key work terms under the Solicitation. The Agency's attempt to condition Wendler's eligibility for award on socioeconomic labor union factors outside of Wendler's control is unlawful, arbitrary, and capricious and should be enjoined by this Court.

37.    Wendler's competitive advantage in estimating and submitting bids on procurements, such as this IFB, comes from its ability to deliver favorable pricing and work terms based solely on competitive market factors and not based on a closed, mandated market that limits labor pricing and work terms to labor unions.

38.    This competitive advantage, based solely on full and open competition, is severely and unfairly prejudiced by the Solicitation's inclusion of the PLA, which unlawfully limits competition on key pricing and work terms solely to labor unions despite the lack of an exception to CICA by Congress to impose such a socioeconomic limit on full and open competition.

PLAs, E.O. 14063, and Implementing Regulations

39.    A PLA is "a pre-hire collective bargaining agreement with one or more labor organizations that establishes the terms and conditions of employment for a specific construction project…" FAR 52.222-34.

40.    In 2022, President Joe Biden issued E.O. 14063, Use of Project Labor Agreements for Federal Construction Projects 87 Fed. Reg. 7363 (Feb. 9, 2022), which mandates that executive agencies award contracts for large-scale construction projects only to contractors that are parties to a PLA. The FAR Council promulgated a final rule to implement E.O. 14063, which requires that "every contractor and subcontractor engaged in construction on the project agree, for that project, to negotiate or become a party to a PLA with one or more labor organizations." *See* Use of Project Labor Agreements for Federal Construction Project, 88 Fed Reg. 88,723 (Dec. 22, 2023) (incorporated in 48 CFR Parts 1, 7, 22, 36, and 52); FAR 52.222-33 (Notice of Requirement for Project Labor Agreement); FAR 52.222-34 (Project Labor Agreement).

41.    The obligations imposed on contractors by E.O. 14063 and the final rules implementing E.O. 14063 ***do not have Congressional authorization***. Instead, they are based on executive branch policy initiatives that aim to advance socioeconomic set-aside interests, but which are unsupported by an act of Congress.

42.    The purported authority for incorporating the PLA Requirements in all large-scale federal construction procurements is set forth in "FAR Subchapter D – *Socioeconomic Programs*," (emphasis added) alongside various other socioeconomic

programs that permit procurement preferences for certain classes of contractors.[3] Unlike the socioeconomic set-asides identified in footnote 3, the PLA Requirements lack underlying statutory authorization. The purported authority for the PLA Requirements instead comes from E.O. 14063 and the regulations implementing the EO, which have never received Congressional approval.

43.    E.O. 14063 is itself unlawful. The E.O. purports to find authority in "the Constitution and the laws of the United States of America, including FPASA, 40 U.S.C. 101 *et seq.*"

44.    FPASA—an Act of Congress—provides no authority for a president to implement a sweeping mandate that unilaterally alters the established and integral process of procuring services using full and open competition as a matter of course, unless a discrete statutory exception allows an executive agency to use noncompetitive procedures. If FPASA included a grant of Congressional authority to the President to establish socioeconomic procurement preference regulations, then there would not have been a need to pass statutes authorizing CICA exceptions for 8(a), HUBZone, SDVOSB, and WOSB preference procurements. Whether a contractor uses union labor or is owned by a veteran has no relationship to a contractor's ability and qualifications to build a government building.

---

[3] These preferences include those pursuant to the Small Business Administration's ("SBA") 8(a) Development Program, Historically Underutilized Business Zones ("HUBZone"), Service-Disabled Veteran Owned Small Business ("SDVOSB"), and Women-Owned Small Business ("WOSB"). Congress knows how to lawfully restrict full and open competition, and it may enact such a restriction based on use of PLAs in large-scale construction procurements if it wishes to do so.

45.    This protest does not rely on competing policy arguments concerning whether PLAs increase or decrease the price of construction to the government or increase or reduce the risk of labor disputes on large government construction projects.   Instead, this protest identifies the legal flaw presented by the PLA Requirements: these requirements constitute a socio-economic labor policy preference that require the use of a labor union's work terms and conditions on large-scale government construction projects, despite that fact that Congress has not authorized such a mandatory preference.[4]

46.    Unless Congress creates an exception to full and open competition for PLAs, the imposition of a PLA mandate on a large-scale government construction project is unauthorized and violates CICA.

The Solicitation and the PLA Requirements

47.    The Agency issued the Solicitation on November 14, 2025, and stated that the Solicitation is an unrestricted invitation for bid.   Exhibit A at 1.   The estimated magnitude of construction is between $25,000,000 and $100,000,000.   *Id.* The Procurement is for the construction of a Cedar Rapids Flood Risk Management Project located in Cedar Rapids, Iowa.

---

[4] Not only has Congress failed to authorize the PLA mandate by enacting a statute to that effect, but when the Agency included the PLA Requirements in the Solicitation, it also failed to provide the required justification and approval ("J&A") and determination and findings ("D&F") that must accompany a procurement conducted using other than full and open competition.  FAR 6.301(b); FAR 6.202.  The Agency has thus failed to discharge its obligation to explain the estimated reduction in overall costs that flow from the PLA Requirements that unduly restrict competition in this Procurement.  *See* FAR 6.202(b)(3); *Nat'l Gov. Servs., Inc. v. United States*, 923 F.3d 977, 989 (Fed. Cir. 2019).  Such an assessment may "not be made on a class basis."  FAR 6.202(b)(1).

48.     Bids in response to the Solicitation are due no later than 1:00 PM CST on January 8, 2026.

49.     The Solicitation states that the Agency intends to award a Firm Fixed Price contract pursuant to FAR 52.214-19.  *See* Exhibit A at 6, 19.   FAR 52.214-19 provides that the Government will evaluate bids in response to the Solicitation without discussions and will award a contract to the responsible bidder whose bid, conforming to the Solicitation, will be most advantageous to the Government, considering only price and the price-related factors specified elsewhere in the Solicitation.

50.     The Solicitation states that the apparent successful offeror under the Solicitation will be required to submit a completed and signed PLA to the Contracting Officer prior to award, and further states that "[t]o be eligible for award, the submitted PLA must comply with the requirements of FAR Provision 52.222-33 Alternate I and FAR 22.504."  Exhibit A at 9.  The Solicitation also incorporates by reference FAR 52.222-34.  *Id.* at 19.

51.     FAR 52.222-33 Alternate I requires the apparent successful offeror to "Negotiate or become a party to a project labor agreement with one or more labor organizations for the term of the resulting construction contract; and Require its subcontractors to become a party to the resulting project labor agreement."  FAR 52.222-33(b)(1)–(2), Alternate I.  The apparent successful offeror must submit a copy of the PLA to the Contracting Officer prior to contract award.  *Id.* at (e).

52.    FAR 52.222-33 and 52.222-34 unlawfully mandate that federal construction procurements with an estimated contract value over $35 million be procured from a specified source: offerors who have entered into a PLA with a labor union.  On this basis, the Government unlawfully imposed the mandatory terms of the PLA Requirements in the Solicitation.

53.    This mandate constitutes an unlawful socioeconomic procurement set-aside that lacks Congressional authorization.  Congress possesses the authority to impose such a set-aside, but it has yet to do so.  Unless and until Congress takes such action, the Agency is precluded from imposing sweeping policy mandates of this kind. *See e.g., Kentucky v. Biden*, 571 F. Supp. 3d 715, 726-27 (E.D. Ky. 2021) (finding that the vaccination mandate by Executive Order 14042 precluded otherwise best-value contractors from competing for contracts if they did not comply with the vaccine mandate, and that the Government could not "preclude full and open competition pursuant to [CICA]" because the agency failed to follow the "congressionally designated procedure" for excluding unvaccinated contractors from competition) (*affirmed as modified by Commonwealth v. Biden*, 57 F.4th 545 (6th Cir. 2023)); *MVL* at 460 ("... the Court leaves to Congress the matter of addressing the President's authority under FPASA to issue expansive construction industry labor policies." (citation omitted).

**COUNT I – DECLARATORY JUDGEMENT**
**(The Mandatory PLA Requirements Violate CICA's Requirement for Full and Open Competition Without Proper Statutory Authorization)**

54.    Wendler re-alleges and incorporates by reference herein Paragraphs 1–53 set forth above.

55.    Under CICA, procuring agencies must "obtain full and open competition through the use of competitive procedures."  41 U.S.C. § 3301(a); FAR 6.101(b).  An agency uses competitive procedures when it allows any responsible source to compete for a procurement.  *PDS Consultants, Inc. v. United States*, 907 F.3d 1345, 1348 (Fed. Cir. 2018).

56.    Notwithstanding the general rule favoring full and open competition, agencies may exclude certain sources from competition, restrict competition to small businesses, or employ one of several justifications to noncompetitive procedures.  41 U.S.C. §§ 3303, 3304(a)(1)–(7), & 3305.  Possible exceptions to full and open competition include "a statute expressly authoriz[ing] or require[ing] that the procurement be made through another executive agency or from a specified source..." 41 U.S.C. § 3304(a)(5).  In other words, if an agency seeks to employ noncompetitive procedures that are not provided in §§ 3303–3305, such procedures must be "otherwise expressly authorized by statute." 41 U.S.C. § 3301(a).

57.    The PLA Requirements mandate that federal construction procurements with an estimated contract value over $35 million be procured from a contractor who has entered into a PLA with a labor union (*i.e.*, a specified source). However, there is no "statute [that] expressly authorizes" this exception to CICA's full and open competition requirement.

58.    The PLA Requirements are contrary to the full and open competition mandate because they prejudice and disqualify otherwise responsible offerors who do not enter into a PLA with a labor union, despite the fact that based on their proposals they may otherwise be awarded the contract.

59.    It is the judiciary's duty to independently interpret statutes free of influence from executive branch policy objectives. *See Loper Bright Enterprises*, 603 U.S. at 403. ("Courts interpret statutes, no matter the context, based on the traditional tools of statutory construction, not individual policy preferences.").

60.    The PLA Requirements are unlawful, not authorized by statute, contrary to 41 U.S.C. § 3301(a), and should be removed from the Solicitation by this Court. The Solicitation seeks to mandate the PLA Requirements in direct violation of CICA's requirement for full and open competition for which no statutory exception exists.

61.    The PLA Requirements constitute a statutorily unauthorized socioeconomic set-aside that must be preliminarily and permanently enjoined by this Court.

**COUNT II – DECLARATORY JUDGMENT**
**(The Solicitation's PLA Requirements Are an Arbitrary and Capricious**
**Unauthorized Socio-Economic Set-Aside in Violation of CICA)**

62.    Wendler re-alleges and incorporates by reference herein Paragraphs 1– 61 set forth above.

63.    The Solicitation states that the Agency intends to award a Firm Fixed Price contract pursuant to FAR 52.214-19. *See* Exhibit A at 6, 19. FAR 52.214-19

provides that the Government will evaluate bids in response to the Solicitation without discussions and will award a contract to the responsible bidder whose bid, conforming to the Solicitation, will be most advantageous to the Government, considering only price and the price-related factors specified elsewhere in the Solicitation.

64.     The Solicitation states that the apparent successful offeror under the Solicitation will be required to submit a completed and signed PLA to the Contracting Officer prior to award, and further states that "[t]o be eligible for award, the submitted PLA must comply with the requirements of FAR Provision 52.222-33 Alternate I and FAR 22.504." Exhibit A at 9. The Solicitation also incorporates by reference FAR 52.222-34. *Id.* at 19.

65.     FAR 52.222-33 Alternate I requires the apparent successful offeror to "Negotiate or become a party to a project labor agreement with one or more labor organizations for the term of the resulting construction contract; and Require its subcontractors to become a party to the resulting project labor agreement." FAR 52.222-33(b)(1)–(2), Alternate I. The apparent successful offeror must submit a copy of the PLA to the Contracting Officer prior to contract award. *Id.* at (e).

66.     The unduly restrictive and unlawful requirements imposed by the PLA Requirements create a statutorily unsupported socioeconomic set-aside that contradict and nullify the Solicitation's requirement for a competitive acquisition, and instead arbitrarily and capriciously mandate Wendler, an otherwise responsible offeror, to "Negotiate or become a party to a project labor agreement with one or more

18

labor organizations for the term of the resulting construction contract; and Require its subcontractors to become a party to the resulting project labor agreement." *See* FAR 52.222-33(b)(1)–(2); Exhibit A at 9.

67.    An agency uses competitive procedures under CICA "when it permits ***any responsible*** source to compete for a procurement…" *PDS Consultants, Inc.*, 907 F.3d at 1348 (citation omitted) (emphasis added).  The agency also uses competitive procedures "when it appropriately restricts competition to 'small business concerns,'" as authorized by Congress.  *Id.* (citation omitted); *see e.g.*, 15 U.S.C. § 644.  The FAR specifically "prescribes policies and procedures for providing for full and open competition after excluding one or more sources" to carry out this Congressional authorization and includes the following set-asides to full and open competition:

- FAR 6.203 (Set-asides for small business concerns);
- FAR 6.204 (Section 8(a) competition);
- FAR 6.205 (Set-asides for HUBZone small business concerns);
- FAR 6.206 (Set-asides for service-disabled veteran-owned small business (SDVOSB) concerns eligible under the SDVOSB Program);
- FAR 6.207 (Set-asides for economically disadvantaged women-owned small business (EDWOSB) concerns or women-owned small business (WOSB) concerns eligible under the WOSB Program); and
- FAR 6.208 (Set-asides for local firms during a major disaster or emergency).

FAR Subpart 6.2.

68.    The PLA Requirements, however, do not have a "set-aside" designation under a statute, and therefore, are currently ineligible for set-asides to full and open competition under the FAR.

69.    The PLA Requirements constitute a congressionally unauthorized Socio-Economic Set-Aside (which does not exist in statute or FAR 6.2) and therefore violates CICA's full and open competition requirements.

70.    Notably, the FAR authority for PLAs is set forth in FAR Subchapter D's requirements on "Socioeconomic Programs" (FAR Subpart 22.5), while the "set-aside" procurement requirements are set forth in FAR Subchapter B's "Competition and Acquisition Planning" (FAR Subpart 6.2).

71.    In order for the government to enforce the PLA Requirements without violating CICA's general requirement for full and open competition, Congress must first enact a statute authorizing set-aside procurements for PLAs, similar to the set-asides set forth under corresponding statutes and FAR Subpart 6.2.

72.    The Court must hold that the statutorily unauthorized PLA Requirements are unlawful under CICA. *See Kentucky v. Biden*, 571 F. Supp. 3d 715, 726-27 (E.D. Ky. 2021) (holding unlawful President Biden's attempt to impose a vaccination policy mandate in violation of federal law); *Loper Bright Enterprises*, 603 U.S. at 403 ("[T]o the extent that Congress and the Executive Branch may disagree with how the courts have performed [statutory interpretation] in a particular case, they are of course always free to act by revising the statute [at issue]."); *Boeing Company v. United States*, 119 F.4th 17, 24–25 (Fed. Cir. 2024) (this Court has

20

exclusive jurisdiction to review the validity of regulations in contract cases, and there is no alternative forum, such as United States district courts, that possesses authority to do so).[5]

73.    The Agency's decision to include the PLA Requirements in the Solicitation was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law.

74.    The Agency acted in an arbitrary and capricious manner by mandating the inclusion of the PLA Requirements in this Solicitation and limiting eligibility for award under this Solicitation to only those bidders who enter a PLA and ultimately require their subcontractors to become parties to a PLA.

75.    The purported authority for this requirement is set forth in FAR Subchapter D – Socioeconomic Programs – alongside various other socioeconomic programs (i.e., SBA's 8(a) Development Program, HUBZone, SDVOSB, and WOSB) that permit procurement preferences for certain classes of contractors.  Unlike the other procurement preferences set forth in this FAR Subchapter (i.e., SBA's 8(a) Development Program, HUBZone, SDVOSB, and WOSB), the PLA Requirements do not possess underlying statutory authorization in FAR Subchapter B's "Competition and Acquisition Planning" (FAR Subpart 6.2).

---

[5] *See* note 1, *supra*, discussing the reasons why this Court should treat CDA jurisdiction equivalent to bid protest jurisdiction for purposes of reviewing the validity of regulations in connection with federal procurements.

76.    The authority for the PLA Requirements instead comes from E.O. 14063, which has never been approved by Congress and is thus unlawful.    *See e.g., Distrib. Sol., Inc. v. United States*, 104 Fed. Cl. 368 (2012) (rejecting an attempt by the Government to circumvent competitive procurement procedures because the Government lacked proper statutory authorization).

77.    In light of these facts, restricting the pool of qualified bidders to those who are parties to a PLA with a labor union and who will submit a completed and signed PLA prior to contract award, despite lacking Congressional authorization, is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law.  A procurement decision is arbitrary and capricious where the procurement official's decision lacks a rational basis or the procurement procedure involves a violation of regulation or procedure.  *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 n.5 (Fed. Cir. 2001).  Here, the Government lacks any rational basis to include the PLA Requirements in the Solicitation, and its inclusion of the PLA Requirements violates procurement law.

78.    The PLA Requirements constitute an unauthorized socioeconomic set-aside that must be preliminarily and permanently enjoined as arbitrary and capricious by this Court.

### COUNT III – PERMANENT INJUNCTIVE RELIEF
### (Rescission of the PLA Requirements from the FAR)

79.    Wendler re-alleges and incorporates by reference herein Paragraphs 1–78 set forth above.

80.     The PLA Requirements are inconsistent and irreconcilable with CICA's framework that allows procuring agencies to deviate from full and open competition only in circumstances specifically identified by Congress.

81.     FAR 52.222-33 and 52.222-34 lack a statutory basis and are premised only on E.O. 14063, which is itself unsupported by an act of Congress.

82.     The presence of the PLA Requirements in the FAR leave procuring agencies—most obviously, DoD and GSA—with their hands tied.

83.     *MVL* held that the PLA Requirements violated CICA's requirement for full and open competition, which prompted DoD and GSA to revise their respective PLA policies for large-scale construction projects.

84.     *NABTU* effectively held that DoD and GSA's attempts to comply with *MVL* were unlawful, which prompted the agencies to re-implement the PLA Requirements in large-scale construction procurements by setting aside the DoD and GSA PLA memoranda.

85.     USACE complied with *NABTU* and incorporated the PLA Requirements in the Solicitation.  By complying with *NABTU*, USACE violates the holding of *MVL*.

86.     Federal contractors like Wendler now return to square one.

87.     Procuring agencies must comply with the FAR, which, at this time, requires procuring agencies to incorporate the PLA Requirements in applicable solicitations.

88.     This FAR Rule, therefore, mandates that all agencies procuring services for large-scale construction projects violate CICA by impermissibly restricting full and open competition in a manner that lacks Congressional authorization.

89.     This Court is the only court that possesses jurisdiction to remedy this state of confusion and legal uncertainty.

90.     With *MVL* as precedent for the assertion that the PLA Requirements restrict full and open competition in violation of CICA, Wendler respectfully requests the Court to enter an order rescinding the PLA Requirements from the FAR and enjoining procuring agencies from including the PLA Requirements in all future large-scale construction procurements, thereby requiring procuring agencies to follow CICA—the ***only*** statutorily authorized process to restrict full and open competition— in appropriate circumstances.[6]

### COUNT IV – DECLARATORY JUDGMENT
### (FPASA Does Not Authorize E.O. 14063)

91.     Wendler re-alleges and incorporates by reference herein Paragraphs 1– 90 set forth above.

92.     E.O. 14063 cites to FPASA as authority for the E.O.'s mandate that PLAs be used on large-scale construction procurements.

93.     FPASA does not provide any such authority.

---

[6] Neither *MVL* nor CICA prevents an agency from including a PLA if it meets CICA's statutory exceptions to limit competition.

94.    Presidents may not rely on FPASA to implement policy mandates that contradict congressional statutes.  *E.g., Kentucky v. Biden*, 571 F. Supp. 3d 715, 726-27 (E.D. Ky. 2021) (*affirmed as modified by Commonwealth v. Biden*, 57 F.4th 545 (6th Cir. 2023)).

95.    If permitted in this context, FPASA will be used by future presidents to unlawfully exert legislative control over procurement functions that are specifically legislated by Congress.

96.    Congress has spoken on the circumstances in which procuring agencies may restrict competition.  When Congress speaks on a matter within its province, the judiciary's role is to uphold lawful acts of Congress.

97.    When the executive branch oversteps and usurps Congress' legislative functions, the judiciary's role is to check the executive's power.

98.    Here, the executive has overstepped and has codified in the FAR an executive branch policy mandate that directly conflicts with Congress' carefully established framework designed to ensure integrity and competition in federal procurements.

99.    Accordingly, Wendler respectfully requests the Court to issue an order declaring that FPASA does not authorize E.O. 14063, as it directly conflicts with CICA, a lawful act of Congress.

## BASIS FOR INJUNCTIVE RELIEF

100.    Absent an injunction, Wendler will be irreparably harmed because Wendler will be subject to a Solicitation that violates procurement law by imposing

an unlawful and statutorily unauthorized socioeconomic set-aside that violates federal law and severely prejudices Wendler's ability to rely on its open-market competitive experience to propose its most competitive pricing and work terms in response to the Solicitation.

101.    The Agency violated CICA's requirement for full and open competition when it arbitrarily and capriciously incorporated statutorily unauthorized socioeconomic set-aside PLA Requirements in the Solicitation.

102.    The Agency will not be harmed by this injunction because the Agency will benefit from correcting its procurement errors and curing the violation of procurement law by removing the PLA Requirements from the Solicitation and thereby facilitating lawful competition among all offerors, which will allow the Agency to receive the most competitive price for this procurement. Further, the Agency will receive clarity as to whether it must comply with *MVL* or *NABTU*, two binding decisions from federal courts that are in direct conflict.

103.    The public interest will be served by injunctive relief because the Agency violated federal statutes and regulations and its actions threaten the integrity of the procurement process. *See Goodwill Industries of South Florida, Inc. v. United States*, 162 Fed. Cl. 160, 210-11 (2022).

104.    Absent a rescission of the PLA Requirements from the FAR, Wendler (and all other highly qualified and experienced federal contractors competing for large-scale federal construction procurements) will continue to either (1) be forced to comply with unlawful and statutorily unsupported policy mandates infiltrating the

procurement process; (2) be required to protest every solicitation in which a procuring agency incorporates the PLA Requirements as mandated by the FAR, causing unnecessary waste of private, executive branch, and judicial resources; or (3) forgo contract opportunities for construction work valued at $35,000,000 or more, effectively chilling the construction industry from competing on projects that are critical to this nation's domestic infrastructure and international presence.

## RELIEF REQUESTED

WHEREFORE, Wendler requests that the Court grant the following relief:

a.    Issue a temporary restraining order and preliminary injunction, issued on an expedited basis requiring the Agency to stay the Procurement process for the Solicitation pending the outcome of this Protest[7];

b.    Issue a declaratory judgement that the Agency's inclusion in the Solicitation of a statutorily unauthorized socioeconomic set-aside in the form of the PLA Requirements violates CICA and is arbitrary, capricious, or otherwise an abuse of discretion;

c.    Issue a permanent injunction and order that the Agency remove and/or void the PLA Requirements from the Solicitation;

d.    Issue a permanent injunction rescinding the PLA Requirements and enjoining the Government from incorporating the PLA Requirements in all future

---

[7] Counsel for Plaintiff will confer with assigned DOJ counsel to request a voluntary stay of award pending the conclusion of this protest, consistent with the practice in *MVL*. Therefore, Plaintiff will defer filing a brief pending discussion with DOJ counsel.

large-scale construction procurements in violation of CICA's requirement for procuring agencies to obtain full and open competition absent a statutory authorization for the use of noncompetitive procedures;

e.      Issue a declaratory judgment that FPASA does not authorize E.O. 14063; and/or

f.      Such other relief as the Court deems just and proper.


Respectfully submitted this 25th day of November 2025.

/s/ Dirk D. Haire
Dirk Haire
Jessica Haire
P. Sean Milani-nia
Joseph L. Cohen
Michael W. Rich
David Timm
Michael J. Brewer
Isabella S. Capanna
**BURR & FORMAN LLP**
99 M St SE, Suite 425
Washington, DC 20003
Phone: (771) 232-1701
dhaire@burr.com
*Attorneys for Wendler, Inc.*

28